HALL, Judge.
Southmoor-Coushatta Insurance Agency, Inc. (formerly Edgerton Insurance Agency, Inc.), as assignee and subrogee of Jerry Nash, filed suit against Minnehoma Insurance Company and American Bank & Trust Company seeking to recover the amount of loss sustained by plaintiff by virtue of having paid for Nash’s account the balance due on a loan made to Nash by the bank, the loan having been secured by a mortgage on Nash’s mobile home which was destroyed by fire. It was alleged that at the time of the fire there was in effect a policy of insurance issued by the defendant insurance company to the bank under a blanket collateral protection plan which afforded coverage to the bank and Nash against loss to the mobile home caused by fire to the extent of the balance due on the loan.
The insurance company and the bank denied the existence of such coverage and any liability.
After trial, the district court found that a policy had been issued for which a premium was charged to the bank and which provided coverage. Judgment was rendered in favor of plaintiff against the insurance company for $14,064.06, the amount of the loan balance paid by plaintiff. Plaintiff’s demands against the bank were rejected.
The insurance company appealed, contending primarily in its assignments of error that no individual policy covering the Nash mobile home was ever issued, that no premium was ever paid for such a policy by the bank or Nash, and that payment of the premium was a prerequisite to effectiveness of any such policy under the terms of the blanket policy or contract between the insurance company and the bank.
Plaintiff answered the appeal, contending that the district court should have awarded penalties and attorney fees.
After review, we find that the district court correctly resolved all issues in this case and, accordingly, we affirm the judgment.
Several years prior to the loss involved in this case, the insurance company issued a blanket collateral protection insurance policy or contract to the bank. Under this policy and the arrangement between the insurance company and the bank, the insurance company provided collateral protection services to the bank. The insurance company maintained records of the bank’s loans and insurance coverage on mortgaged mobile homes and other vehicles. As policies of borrowers came up for renewal or were nearing expiration, the insurance company, on behalf of the bank, sent out notices in order to encourage borrowers to properly renew their required insurance coverage. If coverage lapsed, a notice was sent to the borrower advising that insurance would be secured by the bank and charged to the borrower. If the borrower did not furnish coverage, the defendant insurance company would issue a policy providing coverage for the particular mortgaged property for the amount of the loan balance, effective as of the date the borrower’s insurance had expired. The premium was charged to the bank. Monthly statements were sent by the insurance company to the bank showing policies issued the previous month, the premium charged, and a remaining balance of the account between the insurance company and the bank. Deposits to the insurance company’s account at the bank were regularly made by the bank and credited to the bank’s account with the insurance company.
The bank’s regular procedure when charged a premium for insurance issued under the collateral protection plan was to add the amount of the premium to the borrower’s loan account with the effect of *539 extending the number of monthly payments required to repay the loan.
Jerry Nash, plaintiffs assignor and a regular customer of the bank, bought a house trailer, financed it through the bank, and insured it through the plaintiff insurance agency, for the period April 20, 1978 through April 20, 1979. Nash did not promptly pay his renewal premium, and was sent the notices mentioned above by the defendant insurance company under its collateral protection service afforded the bank, including notice that his insurance had expired and that the bank would obtain insurance and charge him with the premium.
On April 30,1979 Nash paid the insurance agency $339, the amount of the annual renewal premium, and was given a receipt. Through error, the insurance agency credited Nash’s open account with that amount and did not obtain a renewal policy from the insurance company or notify it of receipt of the premium. Nash took a copy of the receipt to the bank and a bank officer filed it in the bank’s insurance file.
Following its usual procedure, the defendant insurance agency under its collateral protection plan with the bank, issued a policy dated June 14, 1979 showing the bank as named insured and Nash as owner/borrower, covering the mortgaged mobile home for the period April 20, 1979 through April 20,1982. The monthly statement sent by the insurance company to the bank dated June 30, 1979 listed, among other policies, a policy issued for Jerry Nash and a premium charge of $1,660 for the three-year premium.
On July 20, 1979 the Nash mobile home was destroyed by fire. Upon inquiry it was discovered that the insurance agency had failed to have Nash’s policy renewed. When the bank was asked if it had obtained coverage, the bank advised the insurance agency and Nash that there was no coverage. The plaintiff insurance agency, commendably recognizing its responsibility to Nash, paid him the value of his mobile home, including paying off the balance on the bank loan in September 1979. Nash assigned and subrogated all rights he had arising out of the loss to the plaintiff agency.
The defendant insurance company continued to show the Nash policy on the reconciliation sheet attached to the monthly statements sent to the bank until September. Upon advice that the loan had been paid off, the insurance company issued a statement on September 27 showing cancellation of the policy with a credit for unearned premium of $1,266. The credit was reflected on the reconciliation sheets for several months, and finally was reflected on the face of the April 1980 statement, and not shown thereafter.
After further inquiry, plaintiff learned of the existence of the policy issued by defendant insurance company to the bank and made demand in March 1981 for payment of the proceeds. Upon defendant’s refusal to pay, this suit followed.
Although employees of the insurance company and the bank testified they did not consider a policy to have been issued or the premium paid, the documentary evidence is to the contrary. A copy of the policy issued by the insurance company in June 1979, providing coverage effective April 20, 1979, is in evidence. The insurance company charged the $1,600 premium to the bank in June 1979 as shown by the statements in the record. When the policy was canceled after the loss and after the bank loan was paid, the insurance company credited the bank with the unearned premium, thereby acknowledging that the policy was in effect for the period for which a premium was earned and charged to the bank. While the statements do not reflect a specific payment of the premium for this specific policy by the bank to the insurance company, neither do the statements reflect specific payments for other specific policies. The statements reflect numerous debits and credits, and deposits by the bank to the insurance company’s account, with current lump sum balances, and it can only be concluded that the earned premium charged to the bank was settled and accounted for in the ongo *540 ing open account transactions between the insurance company and the bank.
The printed form provisions of the blanket policy or contract issued by the insurance company to the bank indicate that prior payment of the premium is necessary to render an individual policy effective. However, the endorsement on the blanket policy which seems to govern the issuance of the individual policy in this case contains no such provision; the only reference to premium is that it shall be paid by the bank. The policy actually issued in June 1979 makes no mention of prior payment of premium. Further, the employee of the defendant insurance company testified the policy would have been considered in effect even if the premium was not paid until after the loss.
There was in full force and effect on the date of the fire loss a policy of insurance issued by the defendant insurance company providing coverage to the bank as named insured and to Nash, as third party beneficiary if not as a direct insured, for damage to the mobile home caused by fire to the extent of the balance due on the loan. Plaintiff, as assignee and subrogee of Nash, is entitled to recover the proceeds of the policy.
Through apparent confusion and error on the part of the bank, the defendant insurance company was not advised of the fire loss and no claim was made under the policy until March 1981, about a year and a half after the loss. Given the difficulty of reconstructing the records and events after the passage of that period of time, the position of the named insured that there was no insurance, and the complexity of the facts which were fully developed only after trial on the merits, failure of the defendant insurance company to make payment within 60 days after demand was not arbitrary, capricious, or without probable cause. LSA — R.S. 22:658. Penalties and attorney fees are not due.
The judgment of the district court is affirmed at appellant’s costs.
Affirmed.